**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FRANK LUIS DE DIOS MARTINEZ,

    Plaintiff,

v.                                                                                  No. 14-cv-0169 MCA/SMV

CIBOLA COUNTY, CITY OF GRANTS,
KATHY GALLEGOS,
PENITENTIARY OF NEW MEXICO, and
GERMAN FRANCO,[1]

    Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant German Franco's *Martinez* Report [Doc. 45], filed December 22, 2015, which the Court construes as a motion for summary judgment ("Motion"). Plaintiff responded on February 18, 2016. [Doc. 51]. Defendant replied on February 25, 2016. [Doc. 54]. On March 4, 2014, the Honorable M. Christina Armijo, Chief United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 3]. Having reviewed the pertinent filings and relevant law, and being otherwise fully advised in the premises, I find that Plaintiff failed to exhaust his administrative remedies on both of his claims. Therefore, I recommend that Defendant's Motion for Summary Judgment [Doc. 45] be granted and all claims be dismissed without prejudice.

---

[1] Kathy Gallegos, Penitentiary of New Mexico, Cibola County, and City of Grants were dismissed as parties in a Memorandum Order and Opinion by Chief Judge Armijo on June 24, 2015. [Doc. 28] at 7. The only remaining claims are against German Franco, the Warden of PNM, in his individual capacity. *Id.*

**Background**

Plaintiff pleaded guilty to first degree murder and other crimes and was sentenced to death in 1995. [Doc. 1] at 9. From 1995 to 2002, Plaintiff was on death row at the Penitentiary of New Mexico ("PNM"). *Id*. at 2. PNM, like many correctional facilities, houses its inmates in separate "levels" based on security factors. [Doc. 45-23] at 17–19 ("brief descriptions of the eligibility criteria for the placement of inmates"). While on death row, Plaintiff was housed on Level VI, the most restrictive housing level. His death sentence was vacated by the New Mexico Supreme Court in 2002 after it found that Plaintiff's "waiver of jury sentencing was not voluntary, knowing and intelligent, because the trial court failed to advise him of the requirement of jury unanimity." *State v. Martinez*, 2002-NMSC-008 ¶ 21, 143 N.M. 32. Plaintiff was subsequently re-sentenced to a term of life imprisonment. Amended Judgment, Sentence, & Commitment [Doc. 45-6] at 4–5. After he was taken off of death row, Plaintiff continued to be housed on Level VI until July 7, 2011, when he was transferred to Level V. [Doc. 45-3] at 11.

Plaintiff filed this lawsuit on February 21, 2014, alleging that his classification in Level VI from 1995 to 2011 violated the Fifth, Sixth, Eighth, and Fourteenth Amendments. [Doc. 1] at 2–3.[2] Interpreting his complaint liberally,[3] Plaintiff also appears to allege that the

---

[2] Plaintiff appears to presume that if he had not been sentenced to death in the first place, he would not have been placed in Level VI. [Doc. 1] at 1–2. Plaintiff offers no support for this, and the Court is not convinced that his presumption is correct. Plaintiff's Offender Disciplinary History indicates that he had serious disciplinary issues while housed on Level VI. [Doc. 45-3] at 1–2 (list of Plaintiff's charges between 1999 and 2008, including engaging in a riot, possession of dangerous contraband, and assault or battery with a weapon); *see also* October 2003 Memorandum from Classification Bureau Chief to Warden, *id*. at 16 ("[Plaintiff] has a documented history of engaging in behaviors that threaten the safety of staff and other inmates."). Plaintiff's May 2011 Review for Release from Level V or VI, *id*. at 12 [("Recommend retain in level VI. While inmate has completed level VI steps and has maintained clear conduct, he was convicted of [criminal sexual penetration] and kidnapping with the victim being a 12-yr old female. . . . His safety concerns are validated.") *and* October 2003 Memorandum from Classification Bureau Chief to Warden, *id*. at 16 ("[Plaintiff] has a documented history of engaging in behaviors that threaten the safety of staff and other inmates.").

conditions of his confinement on Level VI violated his constitutional rights. *Id*. at 2. Plaintiff filed an "Appendix/Supplement" on April 16, 2015, which contained separate allegations concerning his housing classification in 2015. [Doc. 22].

Chief Judge Armijo issued a Memorandum Opinion and Order on June 24, 2015. [Doc. 28]. In it, she dismissed with prejudice "Plaintiff's claims predicated on events that occurred prior to February 2011" as untimely. She also dismissed without prejudice the claims raised in Plaintiff's Appendix/Supplement. Finally, she dismissed all Defendants except for Defendant Franco, the Warden of PNM, in his individual capacity. *Id*. at 7. The only remaining claims concerned events between February 21, 2011 (three years before Plaintiff filed his complaint), and December 31, 2011 (end date of Plaintiff's allegations in his complaint). Plaintiff's appeal of the Order, [Doc. 30], was dismissed by the Tenth Circuit Court of Appeals on August 18, 2015, [Doc. 36-1].

Defendant Franco filed his answer on August 18, 2015. [Doc. 37]. The Court ordered Defendant to submit a *Martinez* Report on October 26, 2015. [Doc. 39]. Defendant filed his Report (which consists of over 800 pages but lacks a useful index) and accompanying brief on December 22, 2015. [Docs. 45–47]. Defendant argues, in relevant part, that Plaintiff failed to exhaust his administrative remedies with regard to both of his remaining claims. Plaintiff responded on February 18, 2016. [Doc. 51]. Defendant replied on February 25, 2016. [Doc. 54]. The Court has construed the *Martinez* Report and accompanying brief as a motion for summary judgment.

---

[3] Pro se filings are interpreted liberally, but a pro se plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim. *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

3

## Summary Judgment Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must support its request by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The movant has the initial burden of establishing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992). Although all facts are construed in favor of the non-movant, he still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

A pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

In a suit brought by a pro se prisoner, a court may order the defendants to investigate the plaintiff's claims and submit a report of that investigation, called a *Martinez* Report. *See Hall,* 935 F.2d at 1109; *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978). A court may use the *Martinez* Report to grant summary judgment upon motion of the defendants. *Hall*, 935 F.2d at 1009–13; see also *Celotex*, 477 U.S. at 326 (courts possess the authority to enter summary judgment sua sponte, so long as the losing party is on notice that she must come forward with all her evidence).

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") sets out express limitations prior to proceeding with a viable lawsuit. Under 42 U.S.C. § 1997e(a) of the PLRA, a prison inmate is required to complete the prison administrative process before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731, 733–34 (2001). The exhaustion requirement is designed to be a disincentive for prisoners who would rather bypass available internal procedures and proceed directly to a lawsuit in federal court. The hope is that some prisoner litigation may be avoided and that the suits that are brought have better documentation for the court to consider. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006).

Congress has eliminated both the discretion to dispense with administrative exhaustion and the condition that administrative exhaustion be plain, speedy, and effective. Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Booth,* 532 U.S. at 739–41. The PLRA's exhaustion requirement applies to all suits arising out of prison life. *Porter v. Nussle*, 534 U.S.

516, 525 (2002); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "[T]he substantive meaning of § 1997e(a) is clear: resort to a prison grievance process must precede resort to a court." *Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1207 (10th Cir. 2003) (internal quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Accordingly, an inmate must do more than initiate the administrative grievance process; he must also complete it prior to filing suit. *Jernigan*, 304 F.3d at 1032.

In a suit governed by the PLRA, the burden of proof for the exhaustion of administrative remedies lies with the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant must prove that: (1) administrative remedies were available to the plaintiff, and (2) the plaintiff failed to exhaust those remedies. *Purkey v. CCA Det. Ctr.*, 2008 WL 313627, at *2, 263 F. App'x 723, 726 (10th Cir. 2008).

## Analysis

### Plaintiff has failed to exhaust his administrative remedies with regard to his classification in Level VI.

Classification decisions are not "grievable." [Doc. 45-6] at 16; [Doc. 45-7] at 13.[4] However, PNM provides an appeal process for inmates who want to challenge their classification in Level VI. *Id.*; [Doc. 45-13] at 19–20; [Doc. 45-19] at 6–7. These appeals are collected and entered into a Level V or VI Appeal Tracking Log Form. [Doc. 45-13] at 20; [Doc. 45-19] at 7. An inmate's classification on Level VI is reviewed annually. Inmates may appeal their initial Level VI classification as well as an annual decision to retain them on Level VI. [Doc. 45-13] at 19−20; [Doc. 45-19] at 6–7; [Doc. 45-14] at 9–10; [Doc. 45-20] at 18–19.

---

[4] Because many of the policies at PNM were revised in 2011, Defendant included all versions of the relevant policies in effect during that year. [Doc. 45] at 2–3. Though it appears that there were few changes to the relevant portions of the policies, the Court cites to both versions when appropriate.

In his complaint, Plaintiff stated that he did not seek administrative relief for his claims. [Doc. 1] at 5. The Court ordered him to show cause why his complaint should not be dismissed for failing to exhaust his administrative remedies. [Doc. 12]. In response, Plaintiff alleged that he filed an informal complaint and a grievance in 2009 regarding his housing classification that went unanswered. He alleges that he also filed an appeal of his Level VI classification in 2010. [Doc. 15] at 1–2. In contrast, Defendant states that there is no record of any classification appeals by Plaintiff from 2008 through the filing of his *Martinez* Report in December 2015. [Doc. 45-1] at 1–2.

After taking the facts in the light most favorable to Plaintiff and assuming all of his allegations to be true, I find that he has failed to exhaust his administrative remedies as to his classification on Level VI. Except for the period between February 21, 2011 and December 31, 2011, Plaintiff's claims regarding his classification have been dismissed. [Doc. 28] at 7. Plaintiff has only alleged that he filed an appeal in 2010. Plaintiff does not allege—much less show—that he filed any appeal regarding his classification in 2011. He was released from Level VI on July 7, 2011. [Doc. 45-3] at 11. Because Plaintiff has failed to initiate—much less exhaust—his administrative remedies with regard to his classification on Level VI, I recommend that his claim regarding his Level VI placement will be dismissed without prejudice.

### Plaintiff has failed to exhaust his administrative remedies with regard to conditions of his confinement on Level VI.

As a preliminary matter, it is difficult to tell whether Plaintiff intended only to make a claim about his classification on Level VI, or whether he also intended to make claims about the conditions of his confinement in Level VI. The only evidence in Plaintiff's complaint that he

7

intended to complain about the conditions of his Level VI classification is his citation to *Gates v. Cook*, 376 F.3d 323, 343 (5th Cir. 2004).[5] Plaintiff included a two-sentence quotation from that case, but did not include any facts about the conditions of his own confinement on Level VI. He only alleged conclusorily that "he was treated cruelly and [unusually] punished." [Doc. 1] at 3. In an abundance of caution, the Court assumes that Plaintiff intended to claim that the conditions of his confinement on Level VI violated his constitutional rights.

In order to exhaust administrative remedies regarding conditions of confinement, an inmate must file an informal complaint within five days of the incident giving rise to the complaint. If the issue is not resolved, the inmate must file a formal grievance within 20 days of the incident. If the grievance is not resolved to the inmate's satisfaction, he may file an appeal with the Office of the Secretary of Corrections. [Doc. 45-6] at 19–23; [Doc. 45-7] at 16–20.

Plaintiff's assertions regarding exhaustion of administrative remedies about the conditions of his confinement have been all over the map. The Court ordered Plaintiff to show cause why his complaint should not be dismissed for failing to exhaust his administrative remedies after he acknowledged in his complaint that he had not exhausted. [Doc. 12]. In response, Plaintiff alleged that he filed informal complaints and grievances in 2009 regarding his housing classification, and that he filed an appeal of his classification in 2010. [Doc. 15] at 1–2. Significantly, he did not allege that he had exhausted his administrative remedies with regard to the conditions of his confinement.

Defendant stated that Plaintiff has filed only two grievances during his incarceration, but

---

[5] In *Gates*, the Fifth Circuit Court of Appeals upheld the district court's finding that the conditions of confinement on death row in a Mississippi prison violated the Eighth Amendment. The conditions included extremely filthy cells, extreme risk of heat-related illnesses, pest infestation, malfunctioning toilets, and poor lighting. 376 F.3d 323.

none between February 21, 2011, to December 31, 2011. [Doc. 45-38] at 14–17. In response, Plaintiff alleged for the first time—nearly two years after he initiated this lawsuit—that he "has put in up to 21 informal complaints and grievances from 2007 to 2011 on the conditions of his cell and non-compliance to the unit manager's not answering his informal or grievances [per] policies."[6] [Doc. 51] at 1. He alleges that his last "informal grievance" was in 2011 and concerned flooding in his cell when it snowed or rained. *Id*. He provides no documentation of this "informal grievance." Plaintiff states that his unit manager did not solve the problem but told him to "deal with it" since he would soon be transferred to Level V. *Id*. at 2.

Assuming all of Plaintiff's allegations to be true and viewing the evidence in the light most favorable to him, I find that Plaintiff has not exhausted his administrative remedies with regard to the conditions of his confinement on Level VI. Plaintiff has provided facts about only one "informal grievance," though he alleges that he filed "up to" 21 informal complaints and grievances from 2007 to 2011. *See id*. at 1–2. Assuming that he did actually file this "informal grievance," Plaintiff does not allege that he followed up with a formal grievance or an appeal. Nor does he provide any details about other grievances he claims to have filed. He does not say whether he followed the required hierarchy of informal complaint, grievance, and appeal for

---

[6] To the extent Plaintiff intended this as an argument that the grievance system was unavailable to him, it fails. It is true that a prisoner will be excused from properly exhausting his administrative remedies if he was "prevent[ed], thwart[ed], or hinder[ed]" from doing so by prison officials. *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010). However, the PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Id*. (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)). Assuming that Plaintiff's allegations are true and that his informal complaints and grievances were ignored, he has not shown that the system was "unavailable" to him or that he could not have filed an appeal as required for exhaustion. *See also Gomez v. Lopez*, 581 F. App'x 724, 725 (10th Cir. 2014) ("[Plaintiff's arguments are unavailing. He should have attempted to file a formal grievance after it was apparent that he would not receive a response to his informal complaint, and admits that he did not do so. [Plaintiff] did not meet his burden of showing that the remedy he failed to seek—a formal grievance—was unavailable to him.").

each incident, or whether any of the "informal complaints and grievances" were about the conditions of his confinement during the period from February 21, 2011, to December 31, 2011. After construing his statements liberally and affording him multiple opportunities to demonstrate exhaustion of administrative remedies of his claims regarding his conditions of confinement, Plaintiff has failed to do so.

## Conclusion and Recommended Disposition

I find that Plaintiff has failed to exhaust his available administrative remedies with regard to his claims about his classification in Level VI and the conditions of his confinement in Level VI. I therefore recommend that Defendant's Motion for Summary Judgment [Doc. 45] be **GRANTED** and this case be **DISMISSED without prejudice.**

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**